All right, we call the second case up 21-10010 Covington Specialty Insurance Company. Our favorite topic says 5th Circuit Judges, Construing Insurance Policy Language. Sent the lady. All right, counsel, Mr. Bassett, go for it. Good morning. May it please the court, Brian Bassett on behalf of the appellant Covington Specialty Insurance Company. I would like to reserve four times for rebuttal, if that's okay with the court. Thank you, your honor. This is an insurance coverage dispute involving whether Covington owes a duty to defend the affilee USAI in an underlying lawsuit filed against USAI. As with most insurance coverage disputes concerning a duty to defend, the focus of the dispute concerns two different documents and the proper interpretation of those documents. The first being the underlying lawsuit filed against USAI, and secondarily, the policy of insurance that Covington issued to USAI. In looking at the allegations of the complaint, the claim concerns the unfortunate drowning death of the plaintiff's decedent at the time that he was sitting post as a security guard at the property owned by USAI. The USAI property was undergoing construction services at that time, and the plaintiff's decedent was therefore hired to provide those security guard services. On the night of July 4th and into the morning of July 5th, a storm occurred on the property that resulted in the plaintiff's drowning death. And the relevant factual allegations for our purposes are really of the complaint. Paragraph 36 states that when the storm occurred, the plaintiff's decedent was sitting post in his vehicle. It doesn't state that the plaintiff was simply sitting in his vehicle at the time. It states and alleges that he was providing security guard services within his vehicle at the time that his drowning death occurred. Paragraph 37 states that as he was sitting in his vehicle, floodwaters overtopped the dam and inundated his vehicle. So again, he's still sitting post in his vehicle, still providing security guard services within his vehicle at the time that his vehicle was inundated with floodwaters. And finally, and perhaps most importantly, paragraph 38. Paragraph 38 alleges that the decedent called 911, and at that point in time, the water was rising up the sides of his vehicle and creating conditions that were unsafe for the scene to move to higher ground. Do we know the time of death and the place of death? We know it was drowning. Do we know the time and place of death? First question. Second question, does it matter in light of the three allegations that you just highlighted for your argument? We do not know the time and place of death, but we don't believe that that is the crux of the issue, Your Honor. We think that if you look at the three-factor test announced in Lindsay, we're looking at what the accident, what happened at the time that the plane was in his vehicle, and whether the accident at that point in time ultimately produced his death. So you're arguing that the peril encountered was the water rising while he was in the vehicle, and we know that he was there because of the phone call, and that that alone satisfies your argument regarding coverage. Is that a fair statement? Correct. The theory of liability asserted against USAI is the premise of liability claims, right? And that the conditions that existed on the property at the time that the plaintiff was sitting in his vehicle and overwhelmed with floodwaters was the event that caused and miles away an hour later is not necessarily our concern. Our concern is what's factually alleged in the complaint. And again, the theory of liability here is what happened at the time when he was sitting in his vehicle guarding the subject property. So getting back to paragraph 38, it alleges that the floodwaters engulfed the vehicle as he was sitting within the vehicle. And finally, and perhaps most importantly, the last sentence of paragraph 38 states, as decedent escaped the vehicle, floodwaters swept the vehicle and the decedent over an embankment. The use of the word add is critical in the dispute between the parties. USAI has argued at the trial court level and before this court that the decedent had clearly exited his vehicle prior to the time he was swept away by the floodwaters. But that's not what's alleged in the complaint. The duty to defend analysis focuses on what's alleged in the complaint and clearly paragraph 38 states that the decedent was actively escaping the vehicle at the time he was swept away by the floodwaters. The use of the word as creates a temporal relationship between what the decedent was doing at that point in time and how the floodwaters swept him away at the time he was actively escaping the vehicle. Yeah, there's no question that as you say, as a temporal matter, he's in the vehicle. I guess the question that this case raises is, is that enough? What if it's purely coincidental that he happened to be in a vehicle, but there's no causal connection between him being the vehicle versus anywhere else and ultimately drowning? Sure. And certainly the case law supports the notion that if the automobile is the mere of the incident, of the injury, that that enough is not enough to establish that the auto exclusion would apply. But we submit, and this really focuses on the third element announced in the Texas Supreme Court's decision 22 years ago in mid-century versus Lindsay as to whether the vehicle actually produced the death. And I think that based on those allegations, it's pretty clear that the vehicle did play a causal relationship in causing the decedent's death. And why is that? Is it because you're focused on the words, escape the vehicle? Well, that's part of it, Your Honor, but I think it's also clear that... What if it was just, you know, he could have escaped? I guess we don't have phone booths anymore, but what if he was just in some other structure that he happened to escape from? You see what I'm getting at. I wonder if this is still a slightest problem for you. So I think that ultimately the allegations established that the flood waters inundated and overwhelmed his vehicle, causing conditions that were unsafe for him to move to higher ground. The allegations established that it was his vehicle that was surrounded by these floodwaters and that the floodwaters engulfed... What if he was in a tent? If he was in a tent, there would be no relationship whatsoever to the vehicle. He would not have been sitting in the vehicle at that point in time. Of course, if he's in a tent, he's not in the vehicle. I get it. But the point is, it would be coincidental, right? In other words, he was in something and he had to escape that something. The vehicle didn't really have any causal role in causing his death. It's just where his sinus was. Respectfully, Your Honor, I think that the allegations establishing that the vehicle was itself engulfed by the floodwaters actually create the condition that ultimately caused his injury. I think what we're looking at here is not whether the vehicle was the direct or proximate cause of his death. It's whether, but for his presence within the vehicle, whether he would have suffered the same fate. And I think the allegations established that the involvement of the vehicle was critical in ultimately him suffering his fate and dying as a result of this incident. The vehicle was surrounded by these floodwaters. It was engulfed by these floodwaters. The vehicle created the condition that ultimately led to his death. So I think that there is a relationship between him being in the vehicle and his death that can't be ignored based on the allegations of 36 through 38. Certainly, if he was just sitting in his vehicle and suffered injuries at that point in time that were unrelated to what was going on around him, I would agree with Your Honor that it was just a situs issue and that ultimately, there is no relationship between the vehicle and the accident. But I don't think that's supported by what's pled in the complaint and the fact that the vehicle... The idea that if he had been, instead of in a car, he was sitting at a picnic table that he wouldn't have drowned, is that sort of the idea? Well, certainly, if he was sitting inside the house at that point in time, there would be, he would not have ultimately died. If he was sitting at a picnic table and he would have seen the floodwaters approaching, he would have gone inside or not stood and sat idle in the floodwaters while they rose up around him. I think it's ultimately important for us to focus here is the factual allegations, right? That's exactly what I was going to say. It's all about what's in the complaint under the eight corners. What is in the complaint that tells you that the vehicle played a causal role, that had he been on a picnic table, he would have been able to see it and escape? Because obviously, if you're in a car, you can see the water coming through. Sure. I think the fact is that... In fact, you might actually decide you want to stay in the car because you're better off in the car. Sure. And no one can understand or get into his mind as to what he was thinking at that point in time. But again, I think the allegations are that the floodwaters inundated his vehicle, right? I think that the allegations are that they engulfed his vehicle and swept him away as he was trying to escape the vehicle. So I think you can't separate out his presence within the vehicle, what the floodwaters were doing to his vehicle at that point in time, and his ultimate injury. I think the allegations in the complaint intertwine how he was acting as a security guard while sitting post within his vehicle, and how that resulted in him ultimately suffering his injuries and his death once he was swept away from the scene from these floodwaters. But I think what we just addressed is the third condition of the Lindsay test. And I think it's important to address the other two as well. The other two factors in the Lindsay test, the first factor being whether the injury arose out of the inherent use of an automobile, and secondarily, whether the accident occurred within the territorial limits of the automobile. As to that first condition, the trial court did not find that Covington failed to satisfy that first condition, and for good reason. We believe that the accident arose out of the inherent use of an automobile in two different ways. The first is that the complaint clearly alleges that the was providing services as a security guard within his vehicle while sitting post in his vehicle at the time of the incident. It did not allege he was just merely sitting at the site in his vehicle at that point in time, but instead established that he was using it for the purposes of providing security guard services. And that, in and of itself, establishes that he was using it for the inherent purpose that it was used for. We do not need to establish, according to the precedent announced in Lindsay, that the vehicle was actually being driven in order to satisfy that first condition. There's also... May I ask you, please, what is the status of the state court lawsuit, the lawsuit that's pending in the 191st Judicial District? It has presently stayed, while one of the other defendants who was dismissed from the case, an appeal is being pursued in connection with that aspect of the proceeding. Okay. And why would it... I mean, I realize why it would benefit your client if we were to decide in your favor now, but wouldn't there also be a benefit to allow that litigation to run its course prior to a determination in this case? Respectfully, I don't believe so, Your Honor. I think from a duty to defend analysis, we're focusing on what's pled in the complaint in and of itself. So ultimately, what may be proven or impact the duty to defend analysis. Our focus needs to be on what the theories that are pled against the insured and what the factual allegations contained within those proceedings contain. So ultimately, the resolution of that appeal or ultimately the resolution of how the underlying case occurs should not impact the duty to defend analysis. So in getting back to the Lindsey test, the second way in which that inherent use is established is the fact that the scene was actively exiting his vehicle at the time the floodwaters took him away. The protection Supreme Court in Lindsey found that the minor that was trying to enter his vehicle at that point in time was, quote, unquote, using his vehicle for an inherent purpose because entering a vehicle is part of the inherent purpose of a vehicle. And we submit that at that point in time, at the time that the proceeding was swept away because he was exiting his vehicle, that's a similarly inherent purpose and use of a vehicle that satisfies the first condition of the Lindsey test. The second condition of the Lindsey test is whether the accident occurred within the territorial limits of the vehicle itself. And we know from Texas Supreme Court precedent that this second condition did not require that the injury that occurred actually occurred within the vehicle itself. Instead, it's the accident that caused the injury. In Lindsey, that particular case involved a claimant who was injured while sitting in a vehicle adjacent to the subject insured vehicle. Similarly, in mid-continent versus global that case involved three individual plaintiffs who were injured while located on the opposite side of a building from the subject's vehicle. So that second condition did not require us to establish that the decedent was inside his vehicle at the time he was injured and ultimately died. We only need to establish that the accident that produced or caused the incident occurred as he was within the territorial limits of the vehicle. And again, looking back at paragraphs 36 through 38 of the complaint, we know that he was sitting in his vehicle at the time that these floodwaters, which again, the theory of liability asserted against USAI is that the property was in such a condition that they should have been aware of the susceptibility to floodwaters. So the theory of liability being that these floodwaters are what caused the decedent's injuries. And so we know that at that point in time when the floodwaters inundated his vehicle, when the floodwaters engulfed his vehicle and made it unsafe for him to reach higher ground, at that point in time, we know that the decedent was located within his vehicle and trying to actively escape the vehicle. And therefore, the second condition of the Lindsay test is satisfied. I see that my time is up. I'll reserve the remaining portion of my argument for rebuttal. Thank you, Your Honors. All right. Thank you, sir. We'll hear from Mr. Skelly. May it please the court, Douglas Skelly from Shedlovski Law Firm on behalf of the USAI defendants. Coming in here today, I have three points to make as to why this court should affirm the district court's opinion, granting summary judgment to my clients on the duty to defend. The first may be brief in light of the argument of Mr. Bassett, but Covington's initial bases for appeal were that the exclusion at issue says that use includes loading and unloading. And also that because of that and because use means more than just driving, Lindsay doesn't apply at all because Lindsay involved an insuring agreement that did not include such language. Those arguments were waived as they were not raised in the district court. Two, under Lindsay, Covington has not and cannot establish as a matter of law that police officer McCuller's death arose out of the use of an auto. And third, because the duty to defend does exist in this case, a ruling on the duty to identify is not justiciable. In light of Mr. Bassett's arguments, I'll skip to the Lindsay test and address that. And in that, I would like to start with the third point, the Injury Producing Act, or that the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury. In this case, based on the allegations, I submit that the allegations are not sufficient to show and that Covington has not shown that the automobile at issue caused the injury. To Judge Ho's point, if you take the allegations and you replace vehicle with the word tent, at the time the water was rising up the size of his tent and conditions were unsafe for the scene to move to higher ground, immediately thereafter floodwaters engulfed the scene's tent, or guard check, the floodwaters swept him away, along with the object that he's sitting in. Those allegations establish that this is the mere situs of the injury or the accident. This is not a situation in which the actual vehicle has done anything to cause injury or that the exiting of the vehicle has caused an injury. There are several cases in Texas state and federal courts that prove this In Lindsay, yes, the minor was climbing into the back window, entering the vehicle, but during that process it set the accident in motion. It discharged the gun. The gun then fired and struck an individual in an nearby car. In Global Intercom, it's not just enough to say that these individuals were on the other side of the outhouse building. It's important to note that they were attached to a rope and pulley system that was attached to a mechanical device operating on the vehicle that by definition in the policy was part of the auto. So the auto did cause the injury because that rope and pulley system failed and the three individuals fell to their death. Similarly, in Aisha's Learning Center, a Fifth Circuit decision, a child was transported in a vehicle for the Learning Center and was left behind. The vehicle was unventilated and because of that, it caused him to suffer injury as the heat rose in that vehicle, injuring him. In contrast, I note Lancer v. Garcia of the Supreme Court of Texas. In that case, you had students that were on a bus for a field trip. The bus driver had tuberculosis. The bus driver transmitted that tuberculosis to the children and there was an argument that this arose out of the vehicle because it was a mode of transportation. The court found that that was not the case because tuberculosis could have been transmitted in a classroom. It could have been transmitted anywhere. It could have been transmitted in a stadium, but it just happened to be transmitted there. In this case, Officer McCullers just happened to be sitting in a car performing security services. We do not dispute. The Judicial Court found that Covington proved that sitting in the vehicle was an inherent natural use of the vehicle. The allegations stayed as much. That is what he was sitting there doing. But sitting in that vehicle did not then cause him to be injured. What caused him to be injured was the floodwaters that swept him away over the embankment along with his vehicle and down into Turtle Creek. An important allegation that is overlooked in Covington's argument is paragraph 42 of the allegations in which it states that 51 days after Officer McCullers' vehicle was found, the decedent's body was discovered nearly three and a half miles downstream of the property on the banks of the Trinity River. A reasonable inference can be made that this wasn't just that as he escaped, he actually escaped the vehicle. It says as much because how else did he get three and a half miles away? I submit to you that that is the result of the rushing floodwaters that caused his injury and nothing about the automobile in which he sat caused that injury, any more so than a tent would have caused his injury or a guard shack would have caused his injury. To state, as Covington has argued in their brief, that had Mr. McCullers just been sitting in the grass he could have escaped the floodwaters is complete supposition. We don't know. We don't know why he didn't know the floodwaters were coming. All it states is that at 1 39 a.m he called 911 for help. He realized that there was a problem and he tried to get out of harm's way. He tried to seek help and he was unable to do so. With regard to the second prong of Lindsay, the accident must have arisen within the natural territorial limits of an automobile and the actual use must not have terminated. Covington agrees here today that the use of the vehicle was sitting in the vehicle. That's what he was doing. That's all he was doing. He was not driving the vehicle. He was not operating in any way. No allegations exist in that regard. Instead he was simply sitting there. As he escaped the vehicle he was no longer sitting in the vehicle. He was no longer using that vehicle in the same way. So the actual use had terminated before his injury. His use had terminated before the accident. The rising floodwaters swept him over that embankment and he died. A couple other cases of note that show that the Lindsay test applies and that Covington is unable to satisfy it are that you can use a vehicle, you can be driving a vehicle as a mode of transportation and fire a gun out of it and that is not use of a vehicle because it's not causing the injury. The connection here between the car and the drowning is simply tenuous at best. The allegations state that it was inundated. The allegations state that the floodwaters engulfed the vehicle but he escaped and he died and he was found three and a half miles away. Because Covington cannot establish as a matter of law that the exclusion applies and it insurance code that they have to establish as a matter of law that the exclusion negates all potential for coverage in this case and they cannot do so. A defense is owed. Because the defense is owed the duty to indemnify in this case is not yet justiciable. As Mr. Bassett noted the underlying case has been up on appeal recently. The time for a petition for review in the Supreme Court has passed. It is my understanding that the parties are working on a new docket control order to get back in the district court's trial calendar and to move that case forward and so as that case progresses we'll obviously learn more about what the actual facts are and what have you but because the allegations in the pleading do not trigger the exclusion whether the actual facts ultimately trigger the exclusion or not may not be decided at this time because it's not justiciable. Your Honor, I do not have anything else to add. If the court has any questions I'd be happy to address them. You've addressed the Lindsay factors but you started off with saying we shouldn't reach it because they waived it. It wasn't argued below. Is that what I understood you to say? I'm sorry Your Honor, Judge Stewart. What I meant to say was what they had argued in the district court is that their first argument in their briefing before this court is that Lindsay does not apply because of the language of the exclusion but then they do also argue that Lindsay applies as an alternative so that argument has not been waived just that Lindsay didn't apply has been waived. Got you. Okay, thanks for the clarification. No problem. Thank you, Your Honor. All right. Any other questions? All right. Thank you, sir. Back to you, Mr. Bassett for rebuttal. Thank you, Your Honor. As to that issue, I'll start there, Your Honor. I think for our purposes, you know, Lindsay adopted a rule but recognized that it was not a strict rule. We can't escape the fact that subsequent decisions addressing whether injury arises out of the use of an auto adopted it and applied the three-part Lindsay test and so that is certainly something that Texas courts have utilized to our argument concerned on that first point just merely references the fact that those terms arising out of and use have been assigned rather broad interpretations by the court and so when you look at Lindsay, Lindsay concerned whether coverage was owned under a automobile liability policy that contained different language than the exclusion contained within the Covington policy and again the Covington policy bars coverage for injuries arising out of the use of an auto rather than affording coverage for claims arising out of the use of an auto and so we merely point out that the Lindsay test is not a strict test and perhaps not necessarily one that the court may want to continue to utilize when looking at broad exclusions like that contained within the Covington policy but assuming that the the Lindsay test does apply I think the focus here has certainly been on the third prong which is whether the vehicle produced that has seen death and yeah I think the the Texas Supreme Court in in mid-continent versus global intercom acknowledged how difficult it may be to determine whether there is a causal relationship between the vehicle and ultimate injury and for that reason they adopted a rather broad test in determining whether the vehicle produced produced the the injury being complained of and that's the but for analysis right but for the decedent's existence and and providing services as a security guard within the vehicle itself would he have suffered the same fate here and that's that test and how broad that test is applied is critical because I think if we were focusing solely on the proximate causation question or a proximate causation question we would have perhaps an issue as to whether the vehicle itself was approximately caused for the scenes injuries and ultimately his death but you look at paragraphs 36 through 38 it's hard to escape the fact that the vehicle clearly played a established that the vehicle itself was overwhelmed and engulfed and inundated by these floodwaters so the vehicle is not irrelevant to the theories of liability but the vehicle is not irrelevant or beside the point where we're talking about how the actual injuries how the plaintiff was ultimately swept away by these floodwaters and and ultimately died the vehicle what of the phrase in paragraph 37 without warning in other words does that suggest that regardless of where he happened to be he was going to be inundated without warning um well I think that at the end of the day it created a situation where when he was sitting in his vehicle that he wasn't prepared to and it goes on in paragraph 38 to allege that he that these conditions that existed at that point in time created a situation where he was unable to move to higher ground so I think it's it's fair to say that we can you know we can come up with situations as to whether he would have moved to higher ground or not or been safe or not but the reality is we're looking at the allegations continuous in the complaint and the complaint makes clear that the vehicle itself did play a role in ultimately creating conditions that resulted in his death so I think you know creating these uh these hypothetical situations um you know doesn't necessarily get us where we need to go as far as analyzing the duty to defend we need to focus in on what actually that the theories flood are contained within the complaint the theories flood are the uh the conditions of the property created the flood that the flood overwhelmed the um finally I guess it's to the point that the council made that the accident did not occur within the territorial limits of the vehicle because use terminated prior to injury as I stated previously um the allegations made clear that he was using his vehicle and actively trying to escape his vehicle at the time the floodwaters overwhelmed the vehicle and so for those reasons john we request that the court reverse the trial court decision and find that covington owed no thank you all right thank you both council we appreciate your briefing and argument the case will be submitted and we'll get it decided you may be excused thank you